IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:22-cr-242-ECM-JTA |
| | ) | |
| LEROY THOMAS JOYNER, JR. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND ORDER

This cause is before the court on the numerous pretrial motions filed by *pro se* Defendant Leroy Thomas Joyner, Jr. ("Joyner"). (Docs. No. 48, 49, 50, 51, 109.) After due consideration of the parties' briefs and applicable law, the undersigned recommends that the motions to dismiss the indictment (Docs. No. 48, 49, 50, 51) be denied. In addition, the undersigned orders that the defendant's motion for leave to file an out of time pretrial motion (Doc. No. 109) be denied.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On August 16, 2022, a grand jury sitting in the Middle District of Alabama returned a single-count indictment against Defendant. (Doc. No. 1.) The indictment alleges between September 2015 and September 2018, in Dale County, Alabama and elsewhere, Defendant knowingly transported a minor in interstate or foreign commerce with the intent that the minor engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2423(a). (*Id.*) The indictment specifically charges Defendant with transporting the minor victim between the State of Alabama and the State

of Georgia with the intent that the minor victim engage in sexual activity for which a person could be charged with a criminal offense under Georgia Code Ann. § 16-6-3. (*Id*.)

Defendant pled not guilty to the charge (Doc. No. 12) and is proceeding *pro se* (Doc. No. 64). This matter is set for trial on October 30, 2023. (Doc. No. 124.)

However, this case is not the first time the Government has prosecuted Defendant for the alleged conduct at issue. Defendant has faced prosecution for the same conduct in two prior cases: *United States v. Joyner*, Case No. 1:20-cr-33-ECM-SMD and *United States v. Joyner*, Case No. 1:21-cr-339-RAH-SRW.

On November 18, 2021, United States Magistrate Judge Susan Russ Walker provided a detailed account of the facts underlying the prosecution of Defendant and the procedural history of the Government's prior prosecutions of Defendant in a Report and Recommendation. *See United States v. Joyner*, Case No. 1:21-cr-339-RAH-SRW, 2021 WL 6751606 (M.D. Ala. 2021). For the sake of judicial efficiency, the undersigned recites Judge Walker's Recommendation below:

> Defendant is a tennis coach, and he was in his late forties at the time of the alleged offense. (Doc. 51-1, at 6, 60). [1] From 2013 to 2018, Defendant operated Grassroots Tennis Association out of Ozark, Alabama. *Id*. at 6-8, 11-12, 42. Defendant provided tennis lessons and home-schooling to a group of children. *Id*. at 11-12. Defendant also took the students to compete in tennis tournaments located in Alabama and several surrounding states. *Id*. at 64-65.
>
> In January 2019, FBI Special Agent Heather Holt Whelan began investigating allegations that Defendant had sexually abused one of his female students, C.S., who, at that time, was 15 years old and living in Ozark,

---

[1] Judge Walker cites to the detention hearing transcript from Case No. 1:20-cr-33-ECM-SMD in her Recommendation. This detention hearing transcript also is properly before the court in this case because Defendant relies upon it in one of his motions.  (Doc. No. 46 at 1) (citing Doc. No. 19, Case No. 1:20-cr-33-ECM-SMD).

Alabama. *Id*. at 35-37, 58-60. During an interview with Whelan, C.S. alleged that, between 2017 and 2018, she and Defendant had approximately 20 sexual encounters, including vaginal and oral sex. Id. at 60, 62-64. Whelan testified that the encounters reportedly occurred in both Alabama and Georgia. *Id*. at 61-62.

The Government originally charged Defendant on February 12, 2020 with aggravated sexual abuse of a child between the age of 12 and 16, in violation of 18 U.S.C. § 2241(c). (Case No. 1:20-cr-00033, Doc. 1). On October 27, 2020, the Government charged Defendant by superseding indictment with knowingly transporting a minor in interstate commerce with the intent that the minor engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). (Case No. 1:20-cr-00033, Doc. 31). Specifically, the indictment charged that Defendant knowingly transported C.S. from Alabama to Georgia with the intent that C.S. engage in sexual activity for which someone could be charged under Ala. Code § 13A-6-62. *Id*. Defendant filed multiple pretrial motions, including a motion to dismiss the superseding indictment for failure to state an essential element of § 2423(a). (Case No. 1:20-cr-00033, Doc. 61, at 1). Defendant argued, among other things, that once the minor crossed into Georgia, she could not have engaged in sexual activity for which a person could be charged under Ala. Code. § 13A-6-62. *Id*. at 3-6.

On June 10, 2021, United States Magistrate Judge Stephen Doyle entered a Report and Recommendation ("R&R") recommending that the superseding indictment be dismissed without prejudice because the Government failed to state an essential element of § 2423(a). *United States v. Joyner*, No. 1:20-CR-33, 2021 WL 3206797, at *1, 5, 7 (M.D. Ala. June 10, 2021). The Government did not file an objection to the R&R, but instead moved to dismiss the superseding indictment without prejudice. (Case No. 1:20-cr-00033, Doc. 94). On June 21, 2021, the district court granted the Government's motion and dismissed the superseding indictment without prejudice. (Case No. 1:20-cr-00033, Doc. 95).

On July 14, 2021, the Government secured the current indictment, which charges that Defendant transported a minor from Alabama to Georgia with the intent that she engage in sexual activity for which someone could be charged with a criminal offense under Ala. Code. § 13A-6- 62 and/or Ga. Code § 16-6-3. (Case No. 1:21-cr-00339, Doc. 1).

*Id*. at *1-*2.  In her Recommendation, Judge Walker recommended that the indictment be

dismissed without prejudice because it charged the criminal offense in the disjunctive

3

which made the indictment legally defective. *Id*. at *7. The Government did not file an objection to Judge Walker's Recommendation, but instead moved to dismiss the indictment without prejudice. Case No. 1:21-cr-339-RAH-SRW, Doc. No. 71. On January 27, 2022, the court granted the Government's motion and dismissed the indictment without prejudice. Case No. 1:21-cr-339-RAH-SRW, Doc. No. 79.

As noted at the outset, the Government secured the present indictment against Defendant on August 16, 2022. (Doc. No. 1.) Defendant now moves to dismiss the present indictment in four separate motions: Renewed Motion to Dismiss Indictment (Doc. No. 48), Renewed Motion to Dismiss Indictment Pursuant to Rule 48(b) and the Speedy Trial Act (Doc. No. 49), Renewed Motion to Dismiss Indictment for Violation of Due Process (Doc. No. 50), and Renewed Motion to Dismiss Indictment for Failure to Preserve Evidence (Doc. No. 51). Defendant also has filed a Motion to Dismiss Based Upon Newly Discovered Evidence of Prosecutorial Misconduct (Doc. No. 109) which the court construed as a motion for leave to file an out of time pretrial motion (Doc. No. 110).

The Government opposes each motion. (Docs. No. 56, 57, 61, 62, 110.) Defendant has filed replies. (Docs. No. 60, 68, 69, 70, 114.) The undersigned conducted a three-part evidentiary hearing on the motions.[2] (Doc. No. 125, Tr.; Doc. No. 126, Tr.; Doc. No. 127, Tr.) Hence, the motions are ripe for disposition.

---

[2] The hearing began on February 24, 2023, resumed on April 13, 2023, and concluded on May 4, 2023. (Docs. No. 125, 126, 127.) Defendant asserted in the hearing that most of his motions, Docs. No. 48-51, raised purely legal arguments for which no testimony would be presented by him. (Doc. No. 125, Tr. at 4 ("No, I'm not intending on calling witnesses, Your Honor."); Doc. No. 126, Tr. at 76-77.)

## II.    STANDARD OF REVIEW

"[A] defendant may challenge an indictment on a variety of ... grounds, including for failure to state an offense, lack of jurisdiction, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct." *United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See id*. Additionally, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). *See also United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).

## III.    DISCUSSION

A.    Destruction of Evidence

At the outset, the undersigned finds it necessary to address an issue which is central to many of the motions currently before the court. Defendant repeatedly asserts in numerous motions that the Government has destroyed evidence. (Docs. No. 49, 50, 51, 109.) Defendant asserts that, in July 2019 during the investigation of this case, the Government obtained phone records and content of text messages from the alleged victim's phone by issuance of a subpoena to Verizon Wireless. (Doc. No. 49 at 2.) Defendant asserts that the Government provided "subpoenaed text message records" to him in November 2020, but failed to provide the "alleged victim's missing SMS/MMS and

outgoing/incoming call records." (*Id.*; Doc. No. 50 at 4, 6.) Defendant argues these records existed because a law enforcement agent testified as to their existence in a detention hearing in June 2020 in a prior prosecution. (Doc. No. 50 at 4) ("Under oath, law enforcement testified to the existence of a historicals [sic] report (SMS/MMS and Outgoing/Incoming Call Records) subpoenaed for which numbers were in contact with which numbers.") (internal quotations omitted).[3] Defendant tried to obtain the records on his own through a subpoena to Verizon Wireless but was unsuccessful because, according to Verizon Wireless, it only maintains call and text records for its subscribers for 365 days and the records subpoenaed by the Government were "past retention and no longer available." (Doc. No. 49-1 at 2, 3.)

In his motions to dismiss, Defendant argues the Government destroyed the alleged victim's SMS/MMS records, outgoing and incoming call records and text messages, all obtained from Verizon Wireless. (Doc. No. 50 at 1) ("The Government … destroyed the alleged victim's cell phone pinging data along with concealing the destruction of at least (782) texts from her phone as well as nearly two months of messages from her mother ….")); (Doc. No. 50 at 2) ("[L]aw enforcement destroyed the alleged victim's SMS/MMS and outgoing/incoming call records obtained from Verizon Wireless … to conceal its occurrence."); (Doc. No. 49 at 9) ("The deliberate destruction of the alleged victim's

---

[3] It is undisputed that Federal Bureau of Investigation ("FBI") Special Agent Heather Whelan Holt testified at a detention hearing held on June 10, 2020 in a prior prosecution.  Case No. 1:20-cr-33-ECM-SMD, Doc. No. 19, Tr. at 58-89. During the hearing, she testified that law enforcement obtained historical phone records from the alleged victim's phone that showed "which numbers were in contact with which numbers[.]"  *Id*. at 85-86.

SMS/MMS and outgoing/incoming call records ….”); (Doc. No. 49 at 10) (“Law enforcement destroyed the evidence in bad-faith ….”); (Doc. No. 51 at 4) (“A thorough review of the SMS/MMS records associated with the Defendant when compared with the alleged victim's historical report executed on August 19, 2020 reflect that at least (782) messages were deliberately destroyed as referenced in yellow.”). Defendant also suggests that “law enforcement had possession of these records, but never provided them to the U.S. Attorney's Office[,]” or that law enforcement “subpoenaed the SMS/MMS and outgoing/incoming call records for the alleged victim … but then withheld them from the defense.” (Doc. No. 51 at 3, 7.)

In his motions, Defendant asserts that these records were exculpatory because

1) … the alleged victim's cell phone tower pinging indicators would contradict her alleged testimony relating to exact locations of sexual activity and 2) … the cell phone pinging indicators would reveal the daily pick-up and drop off routes which would contradict the alleged victim's allegations of being in Ariton, Alabama before tennis lessons, 3) [messages] detailed the daily practice schedule which never included the alleged victim being at Mr. Joyner's residence, 4) [messages showed] that the intent of traveling to tournaments out of state … were planned based upon level of play and the team's past performance, 5) [messages showed] that the planning of tournaments … were chosen a month in advance due to the requirement of paying the entry fee weeks before playing and 6) the reality that parents; including Ms. Sanders was [sic] given a daily and sometimes hourly report on the well-being of their player.

(Doc. No. 50 at 2, 8-9.) Defendant also asserts the

the alleged victim's SMS/MMS and outgoing/incoming call records contained evidence that 1) would specifically identify the alleged victim's cell phone tower pings, 2) would reveal the daily pick-up and drop off routes, 3) would highlight Mr. Joyner [sic] refusal to allow the alleged victim to stay at his residence, 4) would include many discussions to falsely accuse Mr. Joyner of misconduct, 5) would note meetings held to devise a plan to falsely accuse the Defendant (Doc. 58-3), 6) would show the mother bullying the

alleged victim into falsely testifying, 7) would bring to light the alleged victim being threatened with arrest, 8) would display how the mother offered to drop the Dale County PFA application, if the alleged victim would stop taking tennis lessons from Defendant and 9) would reveal the mother falsely accusing the Defendant of kidnapping the alleged victim. (Doc. 58-7).

(Doc. No. 49 at 9.) Defendant argues "[t]he alleged victim's SMS/MMS and outgoing/incoming call records were [his] only hope for exoneration." (Doc. No. 51 at 4) (internal quotations omitted).

In response, the Government denies that it destroyed any evidence and argues it has produced all text messages and Verizon Wireless records in its possession. (Doc. No. 56 at 2-4; Doc. No. 61 at 3; Doc. No. 62 at 3; Doc. No. 125, Tr. at 59.)

Defendant filed a motion seeking an "evidentiary hearing to establish whether or not law enforcement acting as an investigative arm of the Government was in possession of the alleged victim's SMS/MMS and outgoing/incoming call records." (Doc. No. 59 at 5.) The Government opposed the motion. (Doc. No. 72.) After reviewing the motion and response in opposition thereto, and hearing the parties' arguments during oral argument (Doc. No. 125, Tr. at 71-86), the undersigned granted Defendant's motion and held an evidentiary hearing on the issue. (Doc. No. 125, Tr. at 88-89; Doc. No. 73.)

The testimony and evidence presented at the evidentiary hearing April 13, 2023, clearly establish that Defendant received a copy of the alleged victim's SMS/MMS and incoming and outgoing call records that were at issue. FBI Special Agent Whelan Holt testified that she issued a subpoena to Verizon Wireless requesting records from the alleged victim's cell phone, including "Local and long distance telephone connection records (examples include: incoming and outgoing calls, push-to-talk, and SMS/MMS connection

records)[.]" (Doc. No. 127, Tr. at 5; Def. Ex. 1 at 5.)[4] Verizon Wireless responded to the subpoena by producing toll records. (Doc. No. 127, Tr. at 5.) Agent Whelan Holt testified that "toll records are simply records that show what number called what number or what number texted what number" and that SMS/MMS records are toll records. (*Id*. at 5, 6-7.) Agent Whelan Holt also testified that the records produced by Verizon Wireless did not contain any content of any text messages. (*Id*.) She further testified that a search warrant is required in order to obtain content of text messages and that she did not acquire a search warrant to obtain such records from Verizon Wireless. (*Id*. at 5-6.) She testified that the discovery provided by the Government to Defendant included the Verizon Wireless toll records at issue.[5] (*Id*. at 6.) She also testified that the records were provided to Defendant in a digital format, not in hard copy. (*Id*. at 26-28.)

Defendant agreed that he had received a digital copy of the alleged victim's toll records as part of the Government's discovery and admitted a hard copy as an exhibit at the hearing. (Doc. No. 127, Tr. at 8-10, 17, 29, 33.) Defendant also asserted that his exhibit contained incoming and outgoing calls from the alleged victim's phone. (*Id*. at 50-52.)

---

[4] A copy of the subpoena is available at Doc. No. 60-2 in Case No. 1:20-cr-33-ECM-SMD, s*ee* Doc. No. 125, Tr. at 77, as well as Doc. No. 59-1 in the instant case.

[5] Although there are points in the record where it seems the Government asserted no SMS/MMS records or outgoing/incoming calls from the alleged victim's phone were obtained from Verizon Wireless by law enforcement (Doc. No. 125, Tr. at 75, 85), it is clear from the record that the Government was confused about the issue at hand many times but consistently asserted that it had provided all records obtained to Defendant. (Doc. No. 125, Tr. at 74) ("Judge, I haven't looked at that subpoena in a while. I didn't – I guess I was confused about where we were. I don't remember all the language in that subpoena. I think it just requested – it was a broad, all phone records related that we could find. Those were provided."); (Doc. No. 125, Tr. at 85) ("Whatever documents we received from Verizon were provided. That's all."); (Doc. No. 125, Tr. at 75-78, 80.)

Defendant changed course in his arguments to contend that pages were missing from the hard copy because "only one document in here that's relating to the alleged victim" and then changed course to contend that "tower notifications[6] are missing from the side of a document" and "[s]eventeen pages [have] no network element information" and that the document was created by the FBI, not Verizon Wireless. (*Id*. at 25, 52, 53, 56, 63.) Defendant then asserted that employees of Verizon Wireless explained to him "that the records that FBI has provided the defense is incomplete" and stated that assertion was the basis for his argument that the Government had destroyed the evidence. (*Id*. at 47, 48.) The court then suspended the hearing so that testimony from a Verizon Wireless employee could be provided. (Doc. No. 127, Tr. at 74, 76-77.)

When the court resumed the hearing, on May 4, 2023, Christopher Bryla, a subpoena analyst for Verizon Wireless, testified.[7] (Doc. No. 126, Tr. at 6-7.) By that time, Verizon Wireless had located the records produced in response to the 2019 subpoena and produced them to the parties and the court.[8] (*Id*. at 8, 12, 15.) Bryla testified that the records recently located by Verizon Wireless were identical to the records provided to the FBI in 2019. (*Id*. at 15.) Bryla testified that the records included a report of incoming and outgoing calls for

---

[6] Defendant later clarified that this "tower notification" is actually "switching equipment." (Doc. No. 127, Tr. at 59.) Agent Whelan Holt testified that a search warrant is required to obtain "actual tower data." (*Id*. at 59.)

[7] The undersigned finds that Bryla was credible.

[8] On April 21, 2023, Verizon Wireless produced to the court and the parties, a reproduction of the records subpoenaed by the Government in 2019 which relate to the alleged victim's phone. (*See* Doc. No. 103.) Defendant admitted a hard copy of the records into evidence as an exhibit at the hearing. (Doc. No. 126, Tr. at 15.)

the phone number at issue. (*Id*. at 21.) Bryla also testified that the "network element column" is "the switch to process the call." (*Id*. at 16.) Bryla testified that a "switch" is a "network element that processes a call[,]" "but it's not the cell site that handled the call. So that's not to be confused with location information. That's a switch which covers a very broad area.  So that's not going to pinpoint your location." (*Id*. at 16, 17.) Bryla further testified that a court order or search warrant is required to obtain cell site information because law enforcement cannot obtain cell site information with a subpoena. (*Id*. at 21, 28.) Bryla testified that Verizon Wireless did not receive a court order or search warrant from the Government seeking cell site information or content of text messages and thus no such evidence was provided by Verizon Wireless to the Government in this case. (*Id*. at 29-31.)

During the same hearing, Agent Whelan Holt also testified. (Doc. No. 126, Tr. at 35.) Agent Whelan Holt testified that, since the hearing in April 2023, she reviewed the 2019 electronic records provided by Verizon Wireless to the FBI in response to the subpoena and verified that the records were provided to Defendant as part of the Government's discovery. (*Id*. at 35-36.) She also testified that she reviewed the records provided recently by Verizon Wireless and that the records were the same as the records she received in 2019 from Verizon Wireless. (*Id*. at 36-37.) She further testified that those same records had been previously provided to Defendant on many occasions throughout the litigation. (*Id*. at 37.)

The undersigned has considered all of the evidence and argument on this issue and concludes that Defendant has not presented any evidence in support of his claim that the

Government destroyed or concealed records. The unrebutted evidence establishes that the records Verizon Wireless provided in response to the FBI subpoena in 2019 are the same records Verizon Wireless provided to the parties in April 2023 and that those records had already been provided to Defendant by the Government in its discovery. The records were provided in digital format by Verizon Wireless and by the Government.[9] Further, despite Defendant's contentions that these records would indicate the alleged victim's exact location, Bryla's testimony establishes that the subpoenaed records did not provide location information for the victim. (Doc. No. 126, Tr. 16-18.) Bryla's testimony also establishes that the Government did not obtain a search warrant or court order for the production of cell site information nor production of content from text messages from Verizon Wireless. (Doc. No. 126, Tr. at 28-31.) His testimony was corroborated by Agent Whelan Holt's testimony. (Doc. No. 127, Tr. at 5-6.) In short, the undersigned concludes that Defendant's assertion that the Government destroyed or concealed evidence is without merit.

With that central issue resolved, the undersigned now turns to address the various motions filed by Defendant.

---

[9] Defendant argues that "at the first evidentiary hearing, the defense had two documents from the FBI subpoena from July of 2019. After the production of records from Verizon [Wireless], now that particular record has run up to 15. So … from the defense perspective and in our possession, there was 13 records [sic] missing that we now have." (Doc. No. 126, Tr. at 40.)  The undersigned is not persuaded by this argument.  The unrefuted evidence shows that the digital records provided in discovery were the same as the digital records provided by Verizon Wireless to the FBI in 2019. The fact that the number of records in Defendant's possession has increased does not establish that any records were missing from discovery. That fact simply supports the notion that Defendant did not know how to manipulate the digital records to review or print all the information available.

B.      Renewed Motion to Dismiss Indictment for Failure to Preserve Evidence
        (Doc. No. 51)

Defendant moves to dismiss the indictment with prejudice for failure to preserve evidence. (Doc. No. 51.) Defendant reiterates the Government allegedly failed to provide the victim's SMS/MMS and outgoing/incoming call records and contends he has been prejudiced due to the destruction of said evidence. (Doc. No. 51 at 2-4.) At the hearing, Defendant argued that these call records are "basically a roadmap of every position that we were in every day during the relevant time frame. … That particular evidence tells you where everybody was." (Doc. No. 125, Tr. at 70.)

"To establish that the loss of evidence constitutes a violation of due process, the defendant must show that the evidence was likely to significantly contribute to his defense." *United States v. Confer*, No. 20-13890, 2022 WL 951101, at *5 (11th Cir. Mar. 30, 2022) (citation omitted). "This means that the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Wilchcombe*, 838 F.3d 1179, 1191 (11th Cir. 2016) (internal quotations and citation omitted). "Further, the failure to preserve potentially useful evidence only violates due process if the defendant can show bad faith on the part of law enforcement." *Confer*, 2022 WL 951101, at *5.

Here, Defendant has not satisfied his burden. There is no evidence that any phone records were lost or destroyed. Even *assuming arguendo* that some toll records for the alleged victim's phone were not preserved, Defendant has not presented any evidence that

the records were likely to significantly contribute to his defense. Although Defendant argued that the records would establish the alleged victim's location, Bryla testified that the Verizon Wireless toll records did not provide location information, thus the records could not establish the location of the alleged victim during a call or text. Bryla also testified that no content of text messages was provided in response to the FBI subpoena, so all of Defendant's arguments about the Government's deliberate destruction of exculpatory information contained in the alleged victim's text messages fails. Joyner has not presented any evidence that contradicts the testimony of Bryla. Finally, Defendant cannot satisfy the bad faith requirement here. Nothing in the record shows that the Government acted in bad faith, and Defendant's speculation that records must have been destroyed because he could not find them does not suffice. *See Wilchcombe*, 838 F.3d at 1192 ("Speculation to that effect cannot support [defendant's] claim that the Coast Guard acted in bad faith.").

Accordingly, this motion is due to be denied.

C.    Renewed Motion to Dismiss Indictment for Violation of Due Process (Doc. No. 50)

Defendant also moves to dismiss the indictment with prejudice for a violation of his right to due process under the Fifth Amendment. (Doc. No. 50.) Defendant asserts his due process rights were violated during this prosecution because there have "been a total of nearly 13 months of pre-indictment delay coupled with 28 months of post-indictment delay caused by 4 defective indictments and the destruction of exculpatory evidence."[10] (Doc.

---

[10] Defendant reiterates his argument that the Government destroyed the alleged victim's SMS/MMS and outgoing/incoming call records obtained from Verizon Wireless (Doc. No. 50 at 2; Doc. No. 125, Tr. at 56, 63), but he has presented no evidence supporting his claim.  He also

No. 50 at 6.) He contends the "investigation of this case began in January 2019, but the Government waited until February 2020 to obtain an indictment[,]" resulting in an "unwarranted and unnecessary delay." (Doc. No. 50 at 7.) Defendant argued in the hearing that "the time frame from June when the government met with the alleged victim until [he] was indicted in February of 2020, there was no investigation going on per the special agent of this case." (Doc. No. 125, Tr. at 63.) Defendant also stated in the hearing that he was not contending that the current indictment suffered "pre or postindictment delay" and the instant motion "do[es] not deal with the current indictment." (Doc. No. 125, Tr. at 69.)

"The Due Process Clause has a limited role to play in protecting against the prejudice of pre-indictment delay." *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (quoting *United States v. Lovasco*, 431 U.S. at 783, 789 (1977)).[11] "To show a due process violation, the defendant has the burden of showing: (1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage." *Id*. (citing *United States v. Warren*, 772 F.2d 827, 836 (11th Cir. 1985)). *See also United States v. Gouveia*, 467 U.S. 180, 192 (1984) ("[T]he Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the

---

reiterates his belief that such records contained "pinging data" which would establish her exact locations and "daily pick-up and drop off routes." (*Id*.) These assertions were proven to be untrue. (Doc. No. 126, Tr. 16-18.) The Government did not obtain a search warrant or court order for the production of cell site information nor production of content from text messages from Verizon Wireless. (Doc. No. 126, Tr. at 28-31.)

[11] "The yardstick for measuring the constitutionality of pre-indictment delays is the due process clause, not the speedy trial clause, which governs delays after indictment." *United States v. Solomon*, 686 F.2d 863, 871 (11th Cir. 1982) (citing *United States v. Marion*, 404 U.S. 307 (1971)).

Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense."). "[T]his standard is an exceedingly high one …." *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984). The burden of showing both actual prejudice from the government's delay and deliberate design to gain a tactical advantage are on the defendant. *Butler*, 792 F.2d at 1533. "[T]he Constitution places a very heavy burden on a defendant to show that pre-indictment delay has offended due process." *United States v. Orum,* Criminal Action No. 2:12cr57-MHT, 2012 WL 5382843, at *1 (M.D. Ala. Nov. 2, 2012) (citing *Stoner v. Graddick,* 751 F.2d 1535, 1540 (11th Cir. 1985)).

Defendant has not satisfied his burden. "[T]he law in this circuit is that prejudice will not be presumed because of a lengthy delay." *Stoner*, 751 F.2d at 1544. "[W]hen preindictment delay is asserted, actual prejudice and not merely 'the real possibility of prejudice inherent in any extended delay,' is a necessary element which must be shown before the restraints of the due process clause will be applied to bar a prosecution because of a delay." *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975) (quoting *Marion*, 404 U.S. at 324). Here, it is unnecessary to decide whether Defendant has shown actual prejudice from the alleged pre-indictment delay of 13 months because he has failed to meet his burden of establishing that the delay was the product of deliberate action by the Government designed to gain a tactical advantage. *See United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011) ("Tactical advantage is the touchstone in pre-indictment delay cases."). Defendant has presented no evidence that the delay was intentionally designed to obtain some tactical advantage. Moreover, Defendant has presented no

evidence of bad faith on behalf of the Government. *See United States v. Marshall*, 360 F. App'x 24, 26 (11th Cir. 2010) ("Even where no good, detailed reason for the delay exists, we will not provide relief due to a pre-indictment delay unless there is evidence of bad faith or intent to gain a tactical advantage.") (citing *Stoner*, 751 F.2d at 1543). Because Defendant made no showing that the preindictment delay was the product of deliberate design by the Government to gain a tactical advantage over him, the undersigned concludes that his claim of unconstitutional preindictment delay fails. *See Butler*, 792 F.2d at 1534 (no due-process violation when five-year, preindictment delay, due to government's lack of interest in case, resulted in no prejudice to defense), *reh'g denied*, 798 F.2d 1420, *cert. denied*, 479 U.S. 933 (1986).

Accordingly, this motion is due to be denied.

D.      Renewed Motion to Dismiss Indictment (Doc. No. 48)

In Defendant's Renewed Motion to Dismiss Indictment, he argues the indictment should be dismissed with prejudice because (1) "the ambiguous indictment is fatally deficient on Fifth Amendment grounds" and (2) "the continuous charging and dismissing has exposed him to prosecutorial harassment." (Doc. No. 48 at 1, 6, 9.)[12]

As to his Fifth Amendment argument, Defendant argues in his motion that a violation of Georgia Code § 16-6-3(a) requires corroboration of sexual activity and "[f]rom

---

[12] Defendant also argues in his motion that "application of O.C.G.A. § 16-6-3(a) created an ambiguous and uncertain indictment which failed to state an offense." (Doc. No. 48 at 1, 3-6.) However, in the motion hearing, Defendant conceded that the indictment was "legal" and withdrew this argument. (Doc. No. 125, Tr. at 12-14.)

17

the face of the indictment, it can not be guaranteed that the grand jury found probable cause in lieu of § 16-6-3(a) not being a crime without satisfying its corroboration requirement." (Doc. No. 48 at 7.) Defendant argues "that the means, § 16-6-3(a) is not a crime without corroboration which brings into question the probable cause determination which exposes him to ongoing prosecutorial harassment." (Doc. No. 68 at 3.) In a motion hearing, Defendant clarified his argument:

> What I'm arguing, Your Honor, is this: Before we even get to an indictment stage, whatever evidence that the government so chooses, whatever it may be, they must present that evidence to the grand jury. Any criminal defendant has a Fifth Amendment right. Before that grand jury, there has to be a determination of probable cause. That's what I'm actually arguing, *that there is not sufficient probable cause based on -- if you're going to have the 2423(a) put before a grand jury, and the grand jury is to find probable cause, there has to be a finding of a law being broken to trigger 2423(a).*

(Doc. No. 125, Tr. at 15) (emphasis added). Defendant appears to argue that the indictment should be dismissed because it "does not mention corroborating facts to suffice § 16-6-3(a) and contains no other inference that the grand jury considered corroboration when determining that [the] alleged transportation was unlawful." (Doc. No. 68 at 7.) Hence, Defendant seeks dismissal of the indictment with prejudice "for its failure to infer probable cause." (Doc. No. 68 at 13.)

Under the grand jury clause of the Fifth Amendment, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. Const. amend. V. An indictment is legally sufficient if it " '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under

18

the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.' " *United States v. Masino*, 869 F.3d 1301, 1306 (11th Cir. 2017) (quoting *United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013)).

Here, the indictment tracks the language of the transportation of minors statute. 18 U.S.C. § 2423(a) provides:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a). The indictment provides:

> Between on or about September 2015, and on or about September 2018, in Dale County, within the Middle District of Alabama, and elsewhere, the defendant, LEROY THOMAS JOYNER, JR., knowingly transported an individual who had not attained the age of eighteen years, to wit: Minor Victim 1, in interstate or foreign commerce, to wit: between the State of Alabama and the State of Georgia, with the intent that such individual engage in sexual activity for which any person can be charged with a criminal offense, to wit: Ga. Code Ann. § 16-6-3, in violation of Title 18, United States Code, Section 2423(a).

(Doc. No. 1.) The indictment is thus legally sufficient because it charges the language in the statute and provides sufficient factual detail. *United States v. McNair*, 605 F.3d 1152, 1186 (11th Cir. 2010) ("It is well established in this Circuit that an indictment is sufficient if it tracks the language of the statute and provides a statement of facts that gives notice of the offense to the accused.").

Defendant's assertion that corroborating evidence of sexual activity is required in order for him to be charged for violating § 2423(a) for conduct that violates Ga. Code Ann.

19

§ 16-6-3 is misplaced. Although Defendant is correct in his assertion that "no conviction shall be had for [a statutory rape offense] on the unsupported testimony of the female," Ga. Code Ann. § 16–6–3, the corroboration issue is a question for the jury, not a ground for dismissal of the indictment. *See Whited v. State*, 173 Ga. App. 435, 436, 326 S.E.2d 803, 805 (1985) ("The sufficiency of the corroboration and the extent of the corroboration necessary is always a question for the jury.") (citing *Strickland v. State*, 207 Ga. 284(3), 61 S.E.2d 118 (1950)); *also Sharpe*, 438 F.3d at 1263 ("[A] court may not dismiss an indictment ... on a determination of facts that should have been developed at trial.") (quoting *Torkington*, 812 F.2d at 1354). The proper avenue to challenge the sufficiency of the Government's evidence is by way of a motion for judgment of acquittal after the close of the Government's case, and not by a pretrial motion to dismiss. *United States v. Salman*, 378 F.3d 1266 (11th Cir. 2004).

Furthermore, to the extent that Defendant challenges the sufficiency of the evidence presented to the grand jury in support of the indictment, his challenge fails. "An indictment [which is] valid on its face is not subject to a challenge that the grand jury indicted based on inadequate or incompetent evidence." *United States v. Kight*, No. 1:16-CR-00099-AT-LTW, 2020 WL 2050665, at *3–4 (N.D. Ga. Mar. 16, 2020), *report and recommendation adopted*, No. 1:16-CR-0099-AT, 2020 WL 5015787 (N.D. Ga. Aug. 25, 2020). "As the Supreme Court held:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to

20

determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment.

*Id.* (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)). "Despite evidence developed at trial that the only witnesses before the grand jury were three officers whose information was based on hearsay, the Supreme Court in *Costello* denied a motion to dismiss the indictment, explaining that "[a]n indictment returned by a legally constituted and unbiased grand jury ... if valid on its face, is enough to call for trial of the charge on the merits." *Id.*; *see also United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998) ("[I]f the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge, the indictment is not fatally deficient on Fifth Amendment grounds."). Defendant is not entitled to dismissal of the indictment on this ground.

As to prosecutorial harassment, Defendant argues in his motion that the prior indictments against him constitute harassment because they were legally defective, and the present indictment is a result of the Government's vindictiveness. (Doc. No. 48 at 9-11.) In the hearing, Defendant argued:

> Argument number III, Your 1 Honor, is basically prosecutory [sic] harassment with the government charging in the first indictment, dismissing because the indictment was defective; charging in the second indictment, dismissing because it was defective; charging in the third indictment, dismissing because it was defective. And in each time they're utilizing a Rule 48 dismissal improperly by not even providing the Court or myself a reason for these dismissals. Just offering up a Rule 48 dismissal. And it was not -- and in the Court's opinion at each time, there was never a reason.

(Doc. No. 125, Tr. at 17-18.) Defendant then changed course to argue that the Government's stated reasons for dismissing the prior indictments "[went] to the merits of

the case . . so they could, like in *U.S. v. Dyal*, [868 F.2d 424 (11th Cir. 1989)], get a better advantageous position to indict me again." (Doc. No. 125, Tr. at 22.) Defendant thus seeks dismissal of the indictment with prejudice due to the "Government's ongoing prosecutorial harassment via their improper use of two Rule 48(a) motions." (Doc. No. 68 at 13.)

Federal Rule of Criminal Procedure 48(a) provides that, before trial, the United States "may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a). "[T]he 'leave of court' requirement" is primarily intended "to 'protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the [g]overnment moves to dismiss an indictment over the defendant's objection.' " *United States v. B. G. G.*, 53 F.4th 1353, 1361 (11th Cir. 2022) (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)) (other citation omitted). "[It] is precisely because a dismissal under Rule 48(a) does not bar a subsequent prosecution that the rule requires the consent of the court." *United States v. Davis*, 487 F.2d 112, 118 (5th Cir. 1973).[13] "[G]enerally, a [R]ule 48(a) dismissal is without prejudice and does not bar a later prosecution unless a contrary intent is clearly expressed" in the motion to dismiss. *B. G. G.*, 53 F.4th at 1369.

As a preliminary matter, Defendant's assertion that the Government stated no reason for the dismissal of the indictments in the previous cases is belied by the record. The Government sought dismissal of the indictments in both cases for the stated reason of "in

---

[13] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

the interest of justice." (Doc. No. 125, Tr. at 19); Case No. 1:20-cr-33-ECM-SMD, Doc.

No. 94; Case No. 1:21-cr-339-RAH-SRW, Doc. No. 71. One district court has noted that

the "interest of justice" reference is frequently cited by the Government to substantiate a

Rule 48(a) motion and establishes that the dismissal motion is requesting a voluntary

dismissal. *See United States v. Candelario-Santana*, 2023 WL 3604387, at *3 (D.P.R. May

22, 2023) (listing cases). Based upon the Government's request in both previous cases, the

court dismissed without prejudice the prior indictment and superseding indictment. Case

No. 1:20-cr-33-ECM-SMD, Doc. No. 95; Case No. 1:21-cr-339-RAH-SRW, Doc. No. 79.

In the second prosecution, Case No. 1:21-cr-339-RAH-SRW, the court held oral argument

on the motion seeking leave of court to dismiss the indictment prior to granting the motion.

(Docs. No. 76, 79.)

However, even assuming the Government stated no reasons for dismissal of its Rule

48 motion, Defendant's argument fails. "In rule 48(a) dismissals and subsequent

indictments, the government is entitled to a presumption of good faith." *United States v.*

*Matta*, 937 F.2d 567, 568 (11th Cir. 1991). The good-faith presumption recognizes that,

although rule 48(a) is meant to be "a check on the abuse of [e]xecutive prerogatives," it is

not "intended to confer on the [j]udiciary the power and authority to usurp or interfere with

the good faith exercise of the [e]xecutive power to take care that the laws are faithfully

executed." *B. G. G.*, 53 F.4th at 1362 (citation omitted). "It also recognizes that the

government is "the first and presumptively the best judge of whether a pending prosecution

should be terminated." *Id.* (citation omitted).

> The government's failure to state its reasons for dismissal contemporaneously with a Rule 48(a) motion entitles the defendant to dismissal with prejudice only if, in response to the government's motion to dismiss the original prosecution or via his own motion to dismiss a subsequent indictment, complaint or information, the defendant demonstrates (1) that the initial dismissal was in bad faith, or (2) that the defendant "has been prejudiced in his ability to attack the prosecutor's motives due to the trial court's failure to require submission of adequate reasons" as a condition of dismissal of the prior prosecution.

*Dyal*, 868 F.2d at 428 (citing *United States v. Welborn*, 849 F.2d 980, 984 (5th Cir. 1988). The Eleventh Circuit has suggested that a defendant may show bad faith by presenting evidence that the dismissal was (1) for a tactical advantage in derogation of the defendant's rights, (2) to harass the defendant, or (3) a weapon to induce a guilty plea with a threat of indictment. *Id*. at 429. "[T]he key factor in a determination of prosecutorial harassment is the propriety or impropriety of the Government's efforts to terminate the prosecution—the good faith or lack of good faith of the Government in moving to dismiss." *United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982) (emphasis added).

Here, Defendant has not overcome the presumption of good faith nor demonstrated bad faith on the part of the Government. First, Defendant apparently failed to overcome the presumption of good faith in response to the Government's motion to dismiss the indictment in the second prosecution because the court heard oral argument on the Government's motion seeking leave to dismiss the indictment without prejudice on January 21, 2022, and thereafter granted the Government's motion and dismissed the indictment without prejudice. Case No. 1:21-cr-339-RAH-SRW, Doc. No. 79. The undersigned must infer from the court's ruling that Defendant failed to overcome the presumption of good

24

faith and failed to demonstrate bad faith on the part of the Government.[14] Second, the court held a hearing on the motion seeking leave of court to dismiss the second prosecution so Defendant was afforded an opportunity to hear the Government's motives for seeking dismissal and to challenge them. There is no evidence that Defendant was prejudiced in his ability to attack the Government's motives. Third, in his current motion to dismiss the present indictment, Defendant has offered no evidence to rebut the presumption of good faith nor has he demonstrated bad faith or prejudice.[15] Nothing in the record before the court suggests that the Government sought dismissal of the second indictment[16] in order to achieve a tactical advantage in derogation of Defendant's rights or for the purpose of harassment. The record establishes that the Government moved to dismiss the indictments in both previous prosecutions because a magistrate judge in each case recommended dismissal of each indictment due to improper charging. (Doc. No. 125, Tr. at 34-36.) The docket sheet for each prior prosecution supports that fact. *See* Case No. 1:20-cr-33-ECM-SMD, Doc. No. 88; Case No. 1:21-cr-339-RAH-SRW, Doc. No. 65. Defendant has

---

[14] Defendant did not file a direct appeal of the court's ruling.

[15] "[A]n example of the type of prejudice that could affect the defendant's ability to demonstrate the bad faith of the initial request to dismiss might be the death of the only prosecutor with knowledge of the government's motives for seeking dismissal." *Dyal*, 868 F.2d at 429 (citation omitted). Nothing of that nature occurred here.  The federal prosecutor has been the same person in all three prosecutions of Defendant.

[16] Defendant did not oppose the Government's motion seeking dismissal of the indictment without prejudice in the first prosecution. *See* Case No. 1:20-cr-33-ECM-SMD, Docs. No. 94, 95. But it appears that he did not have time to object because the court swiftly granted the Government's motion. Yet, Defendant did not file a direct appeal of the court's ruling.

presented no evidence which counters the Government's stated reasons. Defendant is not entitled to dismissal of the indictment on this ground.

Accordingly, this motion is due to be denied.

E.      Renewed Motion to Dismiss Indictment Pursuant to Rule 48(b) and the Speedy Trial Clause (Doc. No. 49)

Defendant moves for dismissal of the present indictment with prejudice due to an alleged violation of his rights under Rule 48(b) and to speedy trial under the Sixth Amendment. (Doc. No. 49.) Defendant argues that 16 months have passed since the initial 2020 indictment and that the Government deliberately delayed in bringing his case to trial due to two defective previous indictments and needless motions to continue trial.[17] (Doc. No. 69 at 3; Doc. No. 49 at 2-4.) Defendant asserts that his "motion seeks to address his claims that the Government delayed his initial prosecution and as a result, he has suffered substantial and actual prejudice." (Doc. No. 69 at 1.)

In the hearing, Defendant clarified that his speedy trial argument "has nothing to do with the current indictment[,]" (Doc. No. 125, Tr. at 52), but rather related to the post-indictment delay[18] of the Government for the previous indictment:

See, I'm only going back to get the issues that were supposed to be litigated the first time that wasn't, which [the Eleventh Circuit] gave me permission

---

[17] Defendant initially argued that the victim's SMS/MMS and outgoing/incoming call records were destroyed by the Government, but he never presented any evidence in support of his claim.  (Doc. No. 125, Tr. at 56- 58.)  In addition, despite Defendant's contentions that these call records would indicate the victim's exact location, testimony from Bryla established that the records did not provide location information for the victim. (Doc. No. 126, Tr. at 16-18.)

[18]  (*See* Doc. No. 125, Tr. at 48) ("Your Honor, my contention in doc 49 is relating to the government's conduct after the indictment, not before the indictment.")

to do that. And that's the reason why doc 49 and doc 50 exist. Not on the current indictment.

(Doc. No. 125, Tr. at 52.) Defendant asserted, "[t]hose motions do not deal with the current indictment." (Doc. No. 125, Tr. at 69.)

"The Sixth Amendment guarantees that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial....'" *Doggett v. United States*, 505 U.S. 647, 651 (1992). "The Supreme Court has established a four-factor test to determine whether a defendant has been deprived of the constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant." *United States v. Dowdell*, No. 22-11822, 2023 WL 3773715, at *5 (11th Cir. June 2, 2023) (citing *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972)). "The first factor, length of the delay, serves a triggering function." *Id.* at *6 (quoting *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018)). "Unless some 'presumptively prejudicial' period of delay occurred, [the court] need not examine the other three factors." *Id.* (citing *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999). "Delays exceeding one year are generally found to be presumptively prejudicial." *Id.* (quoting *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (quotation marks omitted)). Preindictment delay is not the issue; "only pretrial delay following a person's arrest, charge or indictment is relevant to whether the Speedy Trial Clause of the Sixth Amendment is triggered." *Id.* (citing *Ingram*, 446 F.3d at 1339).[19]

---

[19] Defendant conceded at the hearing that each time a new indictment is returned after a dismissal, the speedy trial clock started anew. (Doc. No. 125, Tr. at 50-51, 52.)

Rule 48(b) provides that "[t]he court may dismiss an indictment … if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b).

Defendant's Speedy Trial Clause argument fails because he ignores that the indictments in the two prior cases were dismissed. "When an indictment is dismissed, and the defendant is later charged with the same offense, any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *Dowdell*, No. 22-11822, 2023 WL 3773715, at *6 (quoting *United States v. MacDonald*, 456 U.S. 1, 7, 102 S. Ct. 1497, 1501 (1982); *see also United States v. McDaniel*, 631 F.3d 1204, 1209 n.2 (11th Cir. 2011) ("The Sixth Amendment speedy trial guarantee was no longer effective for McDaniel's original indictment once the district court dismissed it...."); *MacDonald*, 456 U.S. at 7 ("[T]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges.") Hence, the only Speedy Trial Clause issue that *could* be before the court is an alleged delay between the current indictment and the present trial date, but Defendant has repeatedly asserted that he is not challenging the present indictment nor asserting there has been a delay in obtaining a trial on the present indictment. (Doc. No. 125, Tr. at 52, 53-54, 69.) Accordingly, the undersigned finds no Speedy Trial Clause violation here.

In addition, Defendant's Rule 48(b) argument fails. Rule 48(b) "vests much discretion in the trial court" to determine whether dismissal is warranted, and "dismissal is mandatory only if the defendant's constitutional rights have been violated." *United States v. Dunn*, 345 F.3d 1285, 1297 (11th Cir. 2003) (quotation omitted). Because the

undersigned finds no violation of Defendant's rights under the Speedy Trial Clause, and no other evidence supports dismissal of this case under Rule 48(b), Defendant's motion fails.

Accordingly, this motion is due to be denied.

F.      Motion for Leave to File an Out of Time Pretrial Motion (Doc. No. 109)

Defendant moves to dismiss the indictment based upon "newly discovered" evidence of prosecutorial misconduct. (Doc. No. 109.) Defendant requests dismissal "of the indictment with prejudice due to the following acts of prosecutorial misconduct: (1) obstructing compliance with a court order directing VZW to reproduce a previously issued law enforcement subpoena, (2) concealing of SMS/MMS records for number ending in "5126" and (3) destroying incoming/outgoing call records for number ending in "1061." (*Id*.) Because Defendant filed his motion months after the pretrial motion deadline had expired and he did not seek leave of court as required (Doc. No. 12 at 2), the court construed the motion as a motion for leave to file an out of time pretrial motion (Doc. No. 110). The Government responded in opposition (Doc. No. 111), and Defendant filed a reply (Doc. No. 114).

The Order of Arraignment in this case provides

All pretrial motions under Fed. R. Crim. P. 12(b) and (d), 14 and 16, all notices under Fed. R. Crim. P. 12.1, 12.2 and 12.3, and any motion to compel pursuant to M.D. Ala. LCrR 16.1 Criminal Discovery (a copy of this Rule may be found at http://www.almd.uscourts.gov/forms/almd-local-rules) must be filed no later than TWO DAYS BEFORE THE FIRST PRETRIAL CONFERENCE HELD IN THIS CASE … *No motion filed after this date will be considered unless filed with leave of court.*

29

(Doc. No. 12 at 2) (emphasis added). The first pretrial conference in this case was held on September 21, 2022. (Doc. No. 17.) Defendant filed the instant motion, without seeking leave of court, eight months later on May 11, 2023.

The expiration of time between Defendant's instant motion and the expired pretrial motions deadline is <u>not</u> of utmost importance to the undersigned. What <u>is</u> of utmost importance is that Defendant has delayed in filing the instant motion, has not shown good cause and has not shown excusable neglect. *See* Fed. R. Crim. P. 45(b)(1)(B) ("When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made … after the time expires if the party failed to act because of excusable neglect."). The court extended the pretrial motions deadline to January 2023 per motion of Defendant. (Doc. No. 46.) Defendant then timely filed four pretrial motions seeking dismissal of the indictment with prejudice. (Docs. No. 48, 49, 50, 51.) Defendant also filed a renewed motion for an evidentiary hearing to "establish whether or not law enforcement … was in possession of the alleged victim's SMS/MMS and outgoing/incoming call records." (Doc. No. 59 at 5.) The undersigned granted the motion for evidentiary hearing which, as Defendant has stated, "was the basis of the majority of the motions." (Doc. No. 126, Tr. at 77.) The undersigned heard arguments and testimony on Defendant's motions in February, April and May of 2023. In the three-part hearing, Defendant shifted arguments and made misleading statements all the while he presented no evidence in support of his assertions. When Defendant raised the issue of "newly discovered" evidence in the May hearing, the undersigned immediately addressed it by inquiring of Defendant how evidence could be newly discovered when the

discovery was provided in August 2022. (Doc. No. 126, Tr. at 74-75.) Defendant responded

that he "discovered evidence was missing. I've just discovered that in preparation for the

April 27th [hearing.[20]]" (*Id*. at 75.) The undersigned explained

> But this is the problem, Mr. Joyner. The Court has to impose deadlines so
> that the case can get ready for trial. So the Court cannot sit here and await
> motions that you intend to file when you take the time months later to review
> discovery that you've had since August. And the pretrial motions deadline
> expired months ago.

(*Id*.) During the May hearing, the undersigned clearly conveyed to Defendant the time for

filing pretrial motions had expired and that no new motions were expected. (Doc. No. 126,

Tr. at 74, 75.) Nonetheless, Defendant filed the instant motion one week after the hearing

concluded.

As good cause for his untimeliness, Defendant argues that "A May 4, 2023 order as

a result of this hearing has revealed that (1557) call records have been deleted from the

records for a number ending in "1061" and (1009) call records are missing from the VZW

records for a number ending in "5126." (Doc. No. 109 at 2, ¶ 6.) However, the docket sheet

for this case indicates that the only order that was issued by the court on May 4, 2023 was

an oral order from the undersigned directing Defendant "to file a copy of any evidence

which supports his motion to compel by 5/5/2023 at 5:00 p.m." Hence, contrary to

Defendant's assertion, the May 4 order itself could not "reveal" the deletion of any call

records. Thus, the undersigned is not persuaded by Defendant's argument and good cause

is lacking.

---

[20] The undersigned initially scheduled the April 13, 2023 evidentiary hearing to resume on April
27, 2023 (Doc. No. 93), but later changed the date of the hearing to May 4, 2023 (Doc. No. 101).

Further, Defendant has failed to show excusable neglect. The unrefuted evidence in this case establishes that Verizon Wireless provided digital toll records for the alleged victim's phone to the FBI and the Government in turn provided those same digital records to Defendant in discovery. In fact, the Government provided all of the discovery in digital format to Defendant. Defendant clearly had all the information necessary to challenge the indictment in this manner prior to the extended January date set by the court for pretrial motions, but did not. Defendant does not assert that any condition or circumstances beyond his control prevented him from conducting his "in-depth review" of the discovery at an earlier time. (*See* Doc. No. 109 at 7, ¶ 27; 8, ¶ 32.) Such neglect is simply not excusable.

Accordingly, Defendant's motion to dismiss was not filed with leave of court as required and he has not established good case nor excusable neglect for the untimely filing of the motion. The motion for leave is due to be denied.

Alternatively, even if the undersigned were to grant leave on Defendant's motion to dismiss, the undersigned finds that the motion should be denied. The information presented by Defendant does not come close to justifying such an extreme sanction. Defendant has not shown any prejudice to him for the alleged prosecutorial misconduct that warrants the severe sanction of dismissal of the indictment. *See United States v. Valencia Vergara*, 264 F. App'x 832, 834 (11th Cir. 2008) (holding that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate"); *see also United States v. Maxwell*, No. 05-20571-CR, 2006 WL 8439794, at *1 (S.D. Fla. Oct. 5, 2006) (collecting cases to support the notion that "[t]he dismissal of an indictment for prosecutorial misconduct is an extreme sanction

that should be used rarely"). The Government did not "obstruct compliance" with a court order directing Verizon Wireless to reproduce the records responsive to the 2019 FBI subpoena inasmuch as Verizon Wireless (1) first stated that it no longer had the records and (2) provided the records to the parties and the court once it located the records. There is no evidence of obvious prejudice here when Verizon Wireless ultimately provided the records to Defendant and the evidence establishes that the records provided by Verizon Wireless are the same as the records provided by the Government in discovery. Further, there is no evidence of demonstrable prejudice as to Defendant's remaining arguments. Even assuming without deciding that the alleged conduct occurred, Defendant has not argued nor shown how the toll records between the two individuals at issue are exculpatory or impeaching evidence which caused prejudice to the defense. *See United States v. O'Keefe*, 825 F.2d 314, 318 (11th Cir. 1987) (concluding that "prejudice to the defendant is an essential element when a criminal defendant seeks dismissal of an indictment due to prosecutorial misconduct" and affirming denial of motion to dismiss because the defendants failed to demonstrate prejudice). Dismissal of the indictment is not warranted based on Defendant's claims.

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motions (Docs. No. 48, 49, 50, 51.) be DENIED.

Further, it is ORDERED that Defendant's motion for leave to file an out of time pretrial motion (Doc. No. 109) is DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **August 2, 2023.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 18th day of July, 2023.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE